UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stephen A. Hodgson,                                    Civil No. 11-243 (JNE/FLN)

                          Plaintiff,

              v.                                **REPORT & RECOMMENDATION**

Tom Roy,[1] Joan Fabian, John King,
Michelle Smith, Joseph Hobson, Bruce Julson,
David Reishus, Sheryl Vezner, Greg Lindell,
John Doe, Jane Doe,[2]
                          Defendants.
_____

Stephen A. Hodgson, *pro se*.
Angela Behrens for Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 41).[3] This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendants' motion be **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

Plaintiff Stephen A. Hodgson is an inmate confined at the Minnesota Correctional Facility

---

[1]    Tom Roy is the current commissioner of corrections and is substituted for Joan Fabian, the former commissioner of corrections, as to any claims Hodgson brought against Fabian in her official capacity. *See* Fed. R. Civ. P. 25(d).

[2]    Hodgson does not identify how John Doe and Jane Doe were involved in the allegedly unconstitutional conduct that gave rise to this action. The Court recommends that those defendants be dismissed from the suit.

[3]    Because the Court has considered matters outside the pleadings, it elects to treat Defendants' motion as one for summary judgment pursuant to Fed. R. Civ. P. 56.

in Stillwater (MCF-STW).  Defendants are employees of the Minnesota Department of Corrections and are each involved in various aspects of the administration of MCF-STW:

- Tom Roy, current Commissioner of the Minnesota Department of Corrections;

- Joan Fabian, former Commissioner of the Minnesota Department of Corrections;

- John King, Warden of MCF-STW;

- Michelle Smith, Associate Warden of Operations at MCF-STW;

- Joseph Hobson, Religious Services Coordinator at MCF-STW;

- Bruce Julson, Religious Supervisor at MCF-STW;

- David Reishus, Associate Warden of Operations at MCF-STW;

- Sheryl Vezner, Mailroom Supervisor at MCF-STW;[4]

- Greg Lindell, Corrections Lieutenant at MCF-STW;

Compl. ¶¶ 2-9, ECF No. 1; Reishus Aff. ¶ 1, ECF No. 52; Smith Aff. ¶ 1, ECF No. 53; Vezner Aff. ¶ 2, ECF No 54; Lindell Aff. ¶ 50, ECF No. 50.

Hodgson brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by: interfering with his freedom of expression, interfering with the free exercise of his religion, denying him due process and equal protection of law, and imposing cruel and unusual punishment.  Hodgson also claims that Defendants have violated the Establishment Clause by sponsoring the InnerChange Freedom Initiative, a Christian, faith-based reentry program. Hodgson seeks declarative and injunctive relief along with compensatory and punitive damages.

---

[4]  Defendant Vezner states in her affidavit that she was the MCF-STW mailroom supervisor when Hodgson initiated this lawsuit but has since taken a one-year leave of absence. Vezner Aff. ¶ 1, ECF No 54.

A.     **Mail censorship**

1.     **MCF-STW's mail policies**

MCF-STW's mail and contraband policies prohibit inmates from receiving mail that "constitutes a risk to the safety and security of the facility, specific individuals, or the general public." First Vezner Aff. Ex. 1, ECF No. 11. Inmates are also prohibited from receiving "sexually explicit materials." *Id.* "Sexually explicit materials" are defined as:

1.  all materials that contain pictorial depictions of sexual activity;
2.  published materials featuring nudity or written depictions of sexual activity, unless such depictions illustrate medical, educational, or anthropological content;
3.  non-published materials that contain pictorial depictions of nudity (including but not limited to pictures, photographs, internet printings, and drawings); and
4.  non-published materials containing written depictions of sexual activity that, based on an individualized review, are determined to constitute a risk to the safety and security of the facility, facilitate criminal activity, or undermine offender rehabilitation; but
5.  excluding materials issued by facility treatment staff to an offender currently participating in a sex offender treatment program.

First Vezner Aff. Ex. 1, ECF No. 11. "Nudity" is defined as "the showing (including a see-through covering) of human male or female genitals, anus or pubic area or the showing (including a see-through covering) of the female breast or a substantial portion of the breast below the top of the nipple." *Id.*

MCF-STW staff review each piece of mail an inmate receives in order to ensure that it complies with the applicable policies. First Vezner Aff. ¶ 3, ECF. No. 11. If the reviewing staff member believes the incoming mail violates a policy, the inmate receives a notice of non-delivery. *Id.* The notice provides the inmate with the name of the sender and the reason the mail was denied. *Id.* If an inmate wishes to challenge the confiscation of his or her mail, he may appeal to the mailroom supervisor. *Id.* ¶ 4. If the supervisor denies the appeal, the inmate may then appeal to the

3

correspondence review authority.  *Id.*

## 2. Mail confiscations

MCF-STW mailroom staff confiscated Hodgson's mail on two separate occasions.  In April 2010, Hodgson received twenty copies of an astrology course that numbered over 200 pages.  Fifth Behrens Aff. Ex. 1 at 2, ECF. No. 43.  MCF-STW confiscated the material because the duplicate copies reflected an intent to distribute the courses to other inmates.  First Vezner Aff. Ex. 2, ECF No. 11.  Hodgson appealed this decision to Defendants Vezner and Reishus and conceded in his appeal that the materials were intended for other inmates.  Second Vezner Aff. Ex. 1, ECF No. 54; Reishus Aff. Ex. 1, ECF No. 52.    Both Vezner and Reishus affirmed the confiscation of the astrology courses.  Second Vezner Aff. Ex. 1, ECF No. 54; Reishus Aff. Ex. 1, ECF No. 52.

In May 2010, Hodgson's wife downloaded and mailed him three Wikipedia entries: one on Apollo, another on Dionysus, and a third on Aphrodite.  P. Hodgson Aff. ¶¶ 5-9, ECF No. 7.  MCF-STW mailroom staff confiscated twelve pages from these entries because they contained "sexually explicit materials."  Second Vezner Aff. Ex. 2, ECF No. 54.  The following photographs were among those confiscated by MCF-STW mailroom staff:

  

Exs. 3-5, ECF No. 24.  Hodgson appealed the partial confiscation of the Wikipedia entries, arguing

that the "sexually explicit materials" were in fact pictures of statues and paintings on display in

museums.  Reishus Aff. Ex. 2, ECF No. 52; Second Vezner Aff. Ex. 2, ECF No. 54.  Both Vezner

and Reishus affirmed the confiscation of the photographs.  Reishus Aff. Ex. 2, ECF No. 52; Second

Vezner Aff. Ex. 2, ECF No. 54.

During the pendency of this lawsuit, Mary McComb, Associate Warden of Administration

at MCF-STW,   "independently assessed whether [the confiscated pages] were contraband."

McComb Aff. ¶ 6, ECF No. 31   Although the pages contain several images with "full-frontal

nudity," McComb determined that, "viewed in the whole context of the documents, the images were

allowable."[5]  *Id.*  In October 2011, several months after this lawsuit was filed, McComb provided

---

[5]    McComb observes that "Wikipedia is known for internet users' ability to add or
delete information." McComb Aff. ¶ 7, ECF No. 31. Her "determination that the documents
printed in 2011 were acceptable under DOC policy therefore is no guarantee that the documents

Hodgson with copies of the previously confiscated images.  *Id.* ¶¶ 6-7.

### B.   Photocopying religious material

MCF-STW policy requires inmates who would like photocopies to submit copy requests to their case managers and pay twenty-five cents a page.  Hobson Aff. ¶ 10 & Ex. 3, ECF No. 46. Defendant Hobson, the religious coordinator, has occasionally provided free photocopies of religious materials as a courtesy to religious groups.  If the copies are frequent, voluminous, or for personal use, Hobson still makes the copies but charges the standard photocopying rate.  *Id.* ¶¶ 11-12.

In March 2010, Hodgson asked Hobson to make twenty copies of an astrology course.  *Id.* Ex. 3.  Hobson made the copies as requested but informed Hodgson that if he wanted any additional copies made, he would need to pay the standard photocopying rate.  *Id.*  Hodgson has not asked Hobson to make any additional photocopies.  *Id.* ¶ 13.

### C.   Brigid's Crosses

DOC policy defines "hobby craft" as "personal property in the facility to be used by an offender for an approved craft, and/or the act of using approved property for an approved craft." Second McComb Aff. Ex 3, ECF No. 51.  All hobby craft supplies must be purchased through an approved vendor.  *Id.*  Completed hobby craft items must be shipped out of the facility and cannot be transferred to other inmates.  *Id.*

In February 2010, a Wiccan volunteer sought permission to show Hodgson and other Wiccan inmates how to build a Brigid's Cross–a cross made out of straw or twine–as part of the group's

---

mailed in 2010 necessarily were also acceptable." *Id.* The Court notes that Wikipedia catalogs all prior versions of its entries. *See* Help: Page history - Wikipedia, the free encyclopedia, http://en.wikipedia.org/wiki/Help:Page_history. The photographs included in this report and recommendation appeared in the Apollo, Dionysus, and Aphrodite entries throughout May 2010.

celebration of Imbolc, a Wiccan holiday.  Hodgson Aff. Exs. 9 & 10, ECF No. 58.  Hobson denied

the volunteer's request, reasoning that "[s]howing the offenders how to make this homemade item

would unfairly put them in jeopardy by giving them the skill to make an item that is considered

contraband [and] subjects them to disiciplinary [sic] actions."  *Id.* Ex. 9.  Hobson gave the Wiccan

volunteer permission to bring in a pre-made Brigid's Cross if he wished.  *Id.*  According to Hodgson,

Hobson previously allowed Catholic inmates to make Christian crosses out of palm leaves.  Hobson

Aff. Ex 4, ECF No. 46.  According to Hobson, the Christian, palm-leaf crosses were pre-made and

were distributed to inmates who attended a Palm Sunday service.  Hodgson Aff. Ex. 10, ECF. No.

58.

### D.   The "count" procedure

The "count" procedure is "the process by which the DOC staff account for all inmates."

Lindell Aff. ¶ 5, ECF No. 50.  A count involves two bell sounds.  When the first bell rings, an

inmate "must immediately return to their cells, close their cell doors, and stand in a visible area

facing the cell door."  *Id.*  An inmate must be standing in his cell with the doors closed when the

second bell rings.  *Id.*  The count procedure is described in the MCF-STW inmate handbook.  *Id.*

¶ 5, Ex. 4.  According to Defendant Lindell, all inmates receive a copy of the handbook.  *Id.*  The

handbook specifically states that a third violation of the count procedure will result in disciplinary

action with the inmate being placed in detention.  *Id.* ¶ 5.  More specific details about the count

procedure are contained in a DOC policy that is not accessible to inmates for security reasons.  *Id.*

In February 2010, Defendant Lindell conducted a disciplinary hearing and found Hodgson

guilty of having interfered with MCF-STW's count procedure.  Lindell Aff. Ex. 4, ECF No. 50.

Lindell found that Hodgson was not in his cell before the second bell rang and sentenced him to

fifteen days segregation.  *Id.*  Inmates in segregation are not allowed to work.  *Id.* ¶ 9.  An inmate that misses five days of work loses his job.  *Id.*  Because Hodgson missed more than five days of work due to his segregation, he lost his job as a collateral consequence of his disciplinary offense.  *Id.*  Hodgson alleges that the loss of his job caused him to be placed on "unrestricted idle" status for sixty days and thus confined to his cell for 23 hours a day.  Compl. 15, ECF No. 1.  Hodgson further alleges that he was denied arthritis medication as a result of his segregation.  *Id.*

### E.   InnerChange Freedom Initiative

The InnerChange Freedom Initiative ("IFI") operates a "reentry program for prisoners based on the life and teachings of Jesus Christ" in two Minnesota Correctional Facilities.  Prison Fellowship, Preparing Prisoners for Reentry, http://www.prisonfellowship.org/pf-resources/reentry/ifi.  IFI has offered men's programs in Lino Lakes (MCF-LL) since 2002 and women's programs in Shakopee (MCF-SHK) since 2006.  Crist Aff. ¶ 9, ECF No. 44.  IFI received some government funding between 2001 and 2007.  Crist Aff. ¶ 16, ECF No. 44.  Although the IFI continues to operate in Lino Lakes and Shakopee, it does not receive any government money.  *Id.*

Inmates who would like to participate in the program must apply directly to IFI.  Crist Aff. ¶13, ECF No. 44.  Participation in IFI is voluntary.  *Id.*  Because the program operates at MCF-LL, a medium-security facility, only inmates that are eligible for placement at that facility may participate in the program.  *Id.*  Hodgson is not currently eligible for placement at MCF-LL.  Second McComb Aff. ¶¶ 4, 18.

## II.   ANALYSIS

### A.   Standard of review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.   Eleventh Amendment

Defendants assert that they are entitled to immunity under the Eleventh Amendment to the extent Hodgson seeks damages against them in their official capacities. The Court agrees. The Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens, as well as citizens of another state. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 (8th Cir. 1999). It is well-settled that the Eleventh Amendment precludes an award of money damages against a state official in his or her official capacity in a 42 U.S.C. § 1983 action. *Larson v. Kempker*, 414 F.3d 936, 939 n.3 (8th Cir. 2005). A state, however, may waive its Eleventh Amendment immunity. *Alsbrook*, 184 F.3d at 1005. The State of Minnesota has not waived its immunity or consented to be sued in this case.

Hodgson may maintain an action against Defendants in their official capacities only if the complaint seeks injunctive or prospective relief. *Grand River Enters. Six Nations, Ltd. v. Beebe*, 467

F.3d 698, 701-02 (8th Cir. 2006).  Hodgson's prayer for relief seeks both monetary damages and injunctive relief.  Compl. 18-19, ECF No. 1.  The Court recommends that Hodgson's § 1983 claims be dismissed to the extent they seek damages from Defendants in their official capacities.

### C.  Exhaustion of administrative remedies

Defendants contend that Hodgson's denial-of-medication claim and his Establishment Clause claim should be dismissed because he has not availed himself of available administrative remedies. The Prison Litigation Reform Act of 1996, codified in 42 U.S.C. § 1997e(a), requires immediate dismissal of all claims relating to "prisoner conditions" brought by inmates under 42 U.S.C. § 1983 or any other federal law until "such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005).

To exhaust his available administrative remedies, Hodgson must send intra-prison communications to relevant DOC staff and then proceed up the chain-of-command.  Ebeling Aff. Ex. 1, ECF No. 45.  If these communications do not resolve the dispute, then Hodgson must file a formal grievance within thirty calendar days.  *Id.*  If his formal grievance is denied, Hodgson must then appeal to the DOC's central office.  *Id.*  Hodgson must file both a grievance and a grievance-appeal to exhaust his administrative remedies.  *Id.*  Hodgson has not filed a grievance concerning the alleged denial of medication or InnerChange Freedom Initiative.  *Id.* ¶ 6.

To the extent Hodgson alleges that Defendants improperly denied him medication in February 2010, the Court recommends dismissing that claim because Hodgson has not exhausted his administrative remedies.  However, because Hodgson seeks to challenge the government's prior funding of IFI, and not the conditions of his confinement, the Court finds that his Establishment Clause claim is not subject to the exhaustion requirement.

### D.   Standing

Defendants contend that Hodgson does not have standing to bring an Establishment Clause claim and that any claims arising out of the May 2010 mail confiscation are moot because Hodgson is now in possession of the mail.  The Court finds that Hodgson has not adequately pled facts upon which it could determine whether he has standing to bring an Establishment Clause claim.  The Court further finds Hodgson's May 2010 mail confiscation claims are not moot.

### 1.   Establishment Clause

Article III of the Constitution limits federal courts' jurisdiction to cases and controversies. *Hempstead County Hunting Club, Inc. v. Southwestern Elec. Power Co.*, 558 F.3d 763, 767 (8th Cir. 2009).  Article III standing enforces the case-or-controversy requirement and requires a plaintiff to allege a personal injury that is fairly traceable to the defendant's allegedly unlawful conduct and is likely to be redressed by the requested relief.  *Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.,* 509 F.3d 406, 419 (8th Cir. 2007).  Hodgson may have suffered an injury sufficient to satisfy the standing requirement if he has experienced "direct, offensive, and alienating contact" with the InnerChange Freedom Initiative and altered his behavior as a result of that contact.  *ACLU Neb. Found. v. City of Plattsmouth,* 358 F.3d 1020, 1030 (8th Cir. 2004), *aff'd in relevant part en banc,* 419 F.3d 772, 775 n. 4 (8th Cir. 2005).

Hodgson does not allege that he has altered his behavior in response to the InnerChange Freedom Initiative nor does he allege that he has experienced "direct, offensive, and alienating contact" with the program.  Hodgson is confined in Stillwater.  IFI operates out of Lino Lakes and Shakopee.  Crist Aff. ¶ 2, ECF No. 44.  Hodgson could not have personally observed any IFI programming because he does not have access to those prisons.  Although Hodgson states that

"Defendants, the Religious Practice Committee, and the State of Minnesota [are] actively recruiting offenders at MCF-STW to participate in their [C]hristian faith based program," this allegation is insufficient to confer standing because it does not describe what contact–if any–Hodgson has had with the program.  Compl. ¶ 59, ECF No. 1.  Likewise, the assertion that Hodgson "suffer[s] from the anti-pagan atmosphere of discrimination" generated by the IFI program is insufficient to confer standing.  Fifth Behrens Aff. at 6, ECF No. 43.  Hodgson has not adequately pled a personal injury sufficient to give him standing to challenge the government's prior funding of the IFI program.

Because Hodgson alleges that government funding of IFI violates the Establishment Clause, he may also have standing to bring this claim as a taxpayer.  *Ams. United for Separation of Church & State*, 509 F.3d at 420.  Hodgson, however, does not allege any facts upon which the Court could determine whether taxpayer standing exists.  He does not describe what taxes–if any–he has paid since the inception of the program.  He also has not identified the specific state expenditures that he wishes to challenge.  Without this information, the Court cannot determine whether taxpayer standing exists.  The Court therefore recommends dismissing the Establishment Clause claim without prejudice.

### 2.  Confiscation of photographs

Defendants contend that Hodgson's First Amendment claims, insofar as they relate to the confiscation of the photographs, are moot because he is now in possession of the mail.  The doctrine of mootness is closely related to standing; both enforce the Article III case-or-controversy requirement.  *Id.* at 420-21.  If a prisoner is no longer subjected to an allegedly unconstitutional policy, a case or controversy no longer exists and the prisoner's claims are moot.  *Pratt v. Corr. Corp. of Am.*, No. 06-3556, 267 Fed. Appx. 482, 2008 WL 612571 *1 (8th Cir. Mar. 7, 2008).  But

the law is clear that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Charleston Housing Auth. v. United States Dep't of Agric.,* 419 F.3d 729, 740 (8th Cir. 2005). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 189 (2000).

A court in this district previously ruled that at least one of these defendants violated Hodgson's First Amendment rights by confiscating similar images. *See Hodgson v. Fabian et al.*, Civ. No. 08-5120 (JNE/SRN), ECF No. 54, *adopted*, 2009 WL 2972362 (D. Minn. Sept. 10, 2009), *aff'd*, 378 Fed. Appx. 592 (8th Cir. 2010) [hereinafter "R&R"]. Defendants Reishus and Vezner affirmed the confiscation of these images notwithstanding Judge Nelson's prior ruling. Given the similarity between Hodgson's current claim and his previous claim, the Court finds that Defendants have not met their burden in showing that it is absolutely clear that the allegedly unconstitutional conduct could not reasonably be expected to recur. Hodgson's claim is not moot.[6]

### 3. Claims on behalf of others

To the extent Hodgson asserts claims on behalf of others, Hodgson has not shown that he falls within the narrow exception for third-party standing. *See Hodak v. City of St. Peters,* 535 F.3d 899, 904-05 (8th Cir. 2008). The Court recommends these claims be dismissed with prejudice.

### E.   First Amendment

Hodgson contends that the confiscation of the astrology courses and the photographs violated

---

[6]   Because the Court finds that Hodgson's claims are not moot under the voluntary-cessation exception to the mootness doctrine, it need not consider Hodgson's argument that his claims are not moot because Defendants "destroyed" or "desecrated" his mail.

the First Amendment, but he does not identify which provision was violated.  Because the mail confiscations implicate both the Free Speech Clause and the Free Exercise Clause, the Court liberally construes Hodgson's complaint to include both types of claims.  *See, e.g., White v. Kautzky*, 494 F.3d 677, 680 n. 1 (8th Cir. 2007) (liberally construing *pro se* complaint).

### 1. Free Speech Clause

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."  *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).  But "[a]n inmate does not retain rights inconsistent with proper incarceration."  *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003).  Prison administrators may censor prison mail so long as the censorship is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Court must consider four factors in making this determination: (1) whether there is a "valid, rational connection" between the restriction and the penological interest set forward to justify it; (2) whether there are alternative means available to prison inmates to exercise that right; (3) whether accommodation would have an adverse impact on guards, other inmates, or on the allocation of prison resources generally; and (4) whether there is a "ready" alternative that fully accommodates the prisoner "at *de minimis* cost to valid penological interests."  *Id.* at 89-91.  Hodgson has raised an as-applied challenge to MCF-STW's mail and contraband policy, so the question is whether Defendants' confiscation of these particular items was reasonably related to legitimate penological interests.[7] *Kaden v. Slykhuis,* 651 F.3d 966, 969 (8th Cir. 2011).

### a. Confiscation of astrology courses

---

[7]    The Court does not read Hodgson's complaint to include a facial challenge to MCF-STW's mail and contraband policies.  Even if Hodgson had raised such a challenge, the Court is skeptical that it would succeed.

Hodgson concedes that the duplicate copies of the astrology course were intended for other inmates.[8]  Reishus Aff. Ex. 1, ECF No. 52.  MCF-STW prohibits inmate-to-inmate transfers of all property, including religious material, because they create hierarchies and power conflicts among inmates.  Second McComb Aff. ¶ 6, ECF No. 51.  This prohibition is rationally connected to "internal security, perhaps the most legitimate of penological goals."  *Overton*, 539 U.S. at 133.  Alternative means exist for Hodgson to receive a copy of the astrology course: he could simply order a single copy for himself.  Other interested inmates could also order individual copies for themselves.  Allowing Hodgson to receive multiple copies of the astrology course would jeopardize institutional security and thus adversely impact other inmates, guards, and the allocation of prison resources generally.  The Court concludes that the confiscation of the astrology courses was reasonably related to a legitimate penological interest.  It did not violate the Free Speech Clause of the First Amendment.  The Court recommends this claim be dismissed with prejudice.

### b.  Confiscation of photographs

Defendants Reishus and Vezner argue that the confiscation of Hodgson's photographs was an "isolated incident" or, in the alternative, a "random misapplication of a reasonable regulation."  *See Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an isolated, inadvertent incident of opening an inmate's confidential legal mail does not give rise to a constitutional violation); *Holloway v. Pigman*, 884 F.2d 365, 367 (8th Cir. 1989) (defendant prison officials entitled

---

[8]    The record is silent as to whether Hodgson was allowed to keep one copy of the astrology course.  To the extent Hodgson alleges the confiscation was unconstitutional because both allowable and unallowable items were seized, the Court is satisfied that the confiscation of the allowable astrology course was an isolated incident or, alternatively, a random misapplication of a reasonable regulation.  *See Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Holloway v. Pigman*, 884 F.2d 365, 367 (8th Cir. 1989).

to summary judgment in prisoner civil rights action where a delay in mail resulted from a "random misapplication of a reasonable regulation"). The Court disagrees. MCF-STW mailroom staff have confiscated material from Hodgson's mail, later determined to be "allowable", on five separate occasions. *See* McComb Aff. ¶ 6, ECF No. 31; R&R at 3-4. Hodgson has now filed two lawsuits challenging the constitutionality of these repeated confiscations. Judge Nelson warned the parties to the previous suit, including Defendants Reishus and Vezner, that "if in the future Defendants confiscate similar materials that do not violate the contraband policy, Plaintiff may very well be able to establish a constitutional violation for damages." R&R at 4, n.4. The confiscation of Hodgson's photographs was not an isolated incident or a random misapplication of a reasonable regulation.

Defendants have once again confiscated material that they admit does not violate MCF-STW's contraband policy. *See* McComb Aff. ¶ 6, ECF No. 31. In the previous case, Judge Nelson ruled that because "Defendants conceded the confiscated materials did not violate the contraband policy, prohibiting those particular items is not reasonably related to legitimate penological objectives." R&R at 15. Unlike the previous case, however, it appears to the Court that not everyone agrees as to whether the images in this lawsuit violate the policy. McComb–who is not a party to this lawsuit–states that the images are "allowable", yet Defendants Vezner and Reishus maintain that the images violate the policy. McComb Aff. ¶ 6, ECF No. 31; Second Vezner Aff. ¶ 5 , ECF No. 54; Reishus Aff. ¶ 4, ECF No. 52. Given the apparent disagreement among MCF-STW administrators as to whether the photographs violate the policy, the Court does not rely exclusively on the reasoning contained in Judge Nelson's report and recommendation. Instead, the Court independently concludes that the confiscation of these images bears no reasonable relationship to legitimate penological objectives.

Turning to the *Turner* factors, Defendants offer two legitimate penological interests to justify limiting inmate's access to sexually explicit material: (1) the existence of such material in prison endangers inmates and prison staff because inmates consider it valuable and fight over it; and (2) sexually explicit materials interfere with sex-offender rehabilitation. Second McComb Aff. ¶¶ 12-13, ECF No. 51. These are photographs of statues on display in museums, not pornography. Hodgson has presented evidence showing that prison administrators allowed another inmate to receive an issue of *National Geographic* magazine that contained a photograph of Michelangelo's David–a marble sculpture of a standing male nude. Schreiber Aff. Ex. 3, ECF No. 58. In other words, prison administrators already allow these types of images into the prison. This evidence suggests that Hodgson's possession of these photographs would not have an adverse impact on prison guards, inmates, or the allocation of prison resources generally–a conclusion that is further supported by the concession in both this lawsuit and the prior lawsuit that the images do not violate the policy. *See Williams v. Brimeyer,* 116 F.3d 351, 354 (8th Cir. 1997) (prison officials' inconsistency in rejecting certain materials is a factor to consider in determining whether the rejection of such materials was an exaggerated response to prison concerns). The Court finds that the confiscation of these photographs bears no reasonable relationship to legitimate penological interests and is therefore unconstitutional. The Court recommends that summary judgment be granted in favor of Hodgson on Count I of his complaint.

### c. Other claims

To the extent Hodgson alleges that Defendants have violated his right to freedom of expression by forcing him to pay for photocopies of religious material, the act of paying (or not paying) for a photocopy is not speech or expressive conduct. *See Stephenson v. Davenport Comm.*

17

*Sch. Dist.*, 110 F.3d 1303, 1307 n.4 (8th Cir. 1997). The same is true with respect to the act of constructing a Brigid's Cross in a prayer group. To the extent Hodgson alleges that Defendants have censored material strictly because it was Wiccan-related, he has not presented any evidence to support this allegation. The Court recommends these claims be dismissed with prejudice.

### 2. Free Exercise Clause

Hodgson alleges that Defendants' confiscation of his mail interfered with the free exercise of his religion. To establish a free-exercise violation, an inmate must prove that the government infringed a sincerely held religious belief and that the infringement was not reasonably related to a legitimate penological interest. *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 831 (8th Cir. 2009). Whether a belief is "sincerely held" is a factual question that a court "must not quickly dismiss . . . on summary judgment by concluding that those beliefs are not genuine." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004).

### a. Confiscation of astrology courses

Hodgson alleges that the confiscation of his astrology courses prevented him from "discover[ing] the name of [his] Holy Guardian Angel." Compl. ¶ 31. The confiscation of the astrology courses was reasonably related to legitimate penological interests, so Defendants are entitled to judgment as a matter of law on that claim. *See* Section II.D.1.a, *infra*. The Court recommends this claim be dismissed with prejudice.

### b. Confiscation of photographs

Hodgson alleges that the confiscation of the photographs "denied him the ability to perform religious rituals important to him on the Wiccan Sabbaths of Lammas, Mabon, and Yule, that required images of Apollo, Aphrodite, and Dionysus." Compl. ¶ 23; Hodgson Aff. ¶ 5, ECF No. 58.

Hodgson has not satisfied his burden of production with respect to an essential element of this claim: whether the confiscation infringed his religious beliefs.  The only evidence he has submitted in support of this assertion is a single, self-serving affidavit stating that he needs images of Apollo, Aphrodite, and Dionysus to perform Wiccan rituals.  Hodgson Aff. ¶ 5, ECF No. 58. The Court notes that Hodgson did not raise this issue in the previous lawsuit he brought before Judge Nelson after similar images were confiscated.[9]  Hodgson also does not explain why the images he obtained as a result of that lawsuit are inadequate to perform the rituals in question.  *See* Hodgson Aff., Ex. A(9), Civ. No. 08-5120, ECF No. 35; *see also Patel v. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (requiring inmate to exhaust alterative means of exercising religious beliefs before seeking an accommodation).  Because Hodgson has not presented sufficient evidence to establish that the confiscation of the photographs infringed his religious beliefs, Defendants are entitled to judgment as a matter of law on this claim.  The Court recommends that it be dismissed with prejudice.

### c. Photocopies

Hodgson alleges that Defendants violated the Free Exercise Clause of the First Amendment by forcing him to pay for photocopies of religious material.  Hodgson cannot show that this policy has infringed or otherwise burdened his religious beliefs because he has not been denied free photocopies.  Hobson Aff. ¶ 13, ECF No. 46.  Defendants are entitled to judgment as a matter of law on this claim.  The Court recommends it be dismissed with prejudice.

### F.   Fifth Amendment

---

[9]    In that lawsuit, Hodgson claimed that his religion was substantially burdened by the image confiscation because he was "unable to gain information about his religious deities so that he can better serve and honor the gifts they have given humanity, which is an important part of his religious beliefs."  R&R at 20.  Hodgson did not allege the images were required for rituals.

The Due Process Clause of the Fifth Amendment applies only to acts by the federal government. *Warren v. Gov't Nat'l Mortg. Ass'n*, 611 F.2d 1229, 1232 (8th Cir. 1980). Defendants are employees of the Minnesota Department of Corrections. To the extent Hodgson raises any Fifth Amendment claims against Defendants, those claims fail as a matter of law. The Court recommends that these claims be dismissed with prejudice.

### G.   Eighth Amendment

Hodgson alleges that Defendants violated the Eighth Amendment's ban on "cruel and unusual punishments" by placing him in punitive segregation for fifteen days. The Eighth Amendment standard for a conditions-of-confinement claim is whether Defendants acted with deliberate indifference. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). A prison official is deliberately indifferent if he "knows of and disregards a substantial risk of serious harm to an inmate." *Id.* The Court therefore must determine: (1) "whether a substantial risk to the inmate's safety existed" and (2) "whether the officer had knowledge of the substantial risk to the inmate's safety but nevertheless disregarded it." *Id.* Hodgson has not presented any evidence to satisfy his burden of production as to either element and therefore this claim fails as a matter of law. The Court recommends that it be dismissed with prejudice.

### H.   Fourteenth Amendment

Hodgson generally alleges that Defendants violated the Fourteenth Amendment by confiscating his mail, prohibiting him from constructing Brigid's Crosses, denying him free photocopies of religious material, sponsoring the InnerChange Freedom Initiative, punishing him for violating a "secret policy," and by prohibiting him from calling witnesses at a disciplinary hearing. Hodgson does not specify what provision of the Fourteenth Amendment was violated by these

actions.  The Court finds that Hodgson does not have a cognizable claim under any provision of the Fourteenth Amendment.

### 1. Procedural Due Process

"No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. Amend. XIV.  In addressing a procedural due process question, the Court first asks whether state action has deprived an individual of a protected property or liberty interest.  *Keating v. Nebraska Public Power Dist.*, 660 F.3d 1014, 1017 (8th Cir. 2011).  Hodgson has a liberty interest in receiving uncensored correspondence.  *Bonner v. Outlaw*, 552 F.3d 673, 677 (8th Cir. 2009).  "An inmate whose mail is withheld must receive notice, an opportunity to be heard, and an opportunity for appeal to a prison official who was not involved in the original censorship decision."  *Murphy v. Mo. Dep't of Corr.*, 814 F.2d 1252, 1258 (8th Cir. 1987).  MCF-STW's mail policy complies with those requirements.  *See* R&R at 17.  To the extent Hodgson challenges the mail confiscations on procedural due process grounds, his claim fails as matter of law.  The Court recommends this claim be dismissed with prejudice.

Hodgson has a liberty interest in remaining free from restraints that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Assuming for the sake of argument that Hodgson possessed a liberty interest in remaining free from punitive segregation, he fails to articulate why the disciplinary hearing he received was inadequate (i.e. why due process demands that he be allowed to call witnesses on his own behalf).[10]  *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("Due process

---

[10]   To the extent Hodgson alleges that he did not have notice of the count procedure, he has failed to rebut Defendant Lindell's assertion that Hodgson was aware of the policy due to its placement in the MCF-STW handbook.  Lindell Aff. ¶ 5 & Ex. 4, ECF No. 50.

is flexible and calls for such procedural protections as the particular situation demands.")  To the extent Hodgson challenges his placement in punitive segregation on procedural due process grounds, his claim fails as a matter of law.  The Court recommends this claim be dismissed with prejudice.

Hodgson has not alleged, nor has he produced any evidence tending to show, that he has a constitutionally-protected liberty or property interest in constructing Brigid's Crosses, receiving free photocopies of religious material, the existence *vel non* of the InnerChange Freedom Initiative, or reading DOC policies.  To the extent he challenges these actions as deprivations of procedural due process, his claims fail as a matter of law.  The Court recommends these claims be dismissed with prejudice.

### 2. Substantive Due Process

A valid substantive due process claim requires that Hodgson show that Defendants' actions "violated one or more fundamental constitutional rights and were shocking to the contemporary conscience."  *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).  Hodgson has not identified any fundamental rights the violation of which could give rise to a substantive due process claim, nor has he identified any actions that "shock the contemporary conscience."  *Id.*  Consequently, to the extent Hodgson alleges that Defendants have violated his substantive due process rights, his claim fails as a matter of law.  The Court recommends this claim be dismissed with prejudice.

### 3. Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike, a protection that applies to prison inmates."  *Murphy v. Mo. Dept. of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004).  To succeed on an equal protection claim, Hodgson must show that he was treated differently than a similarly situated class of inmates and that the unequal

treatment burdens one of his or her fundamental rights or is based on a suspect classification.  *Patel v. Bureau of Prisons*, 515 F.3d 807, 815-16 (8th Cir. 2008).  Religion is a suspect classification.  *Id.*  Hodgson must also prove that Defendants intentionally or purposefully discriminated against him on account of his religion and that the unequal treatment was not reasonably related to legitimate penological interests.  *Id.*  General allegations about other religious groups being treated more favorably are not sufficiently specific to support an equal protection claim.  *Runningbird v. Weber*, No. 05-3176, 198 Fed. Appx. 576, 578, 2006 WL 2466194, *2 (8th Cir. Aug. 28, 2006).

### a. Photocopying religious material

Hodgson claims that Defendant Hobson photocopied religious material for Christians for free but required Hodgson and other Wiccans to pay for their religious photocopies.  Compl. ¶ 40, ECF No. 1.  According to Hobson, Hodgson has never been denied photocopies.  Hobson Aff. ¶ 13, ECF No. 46.  Hodgson only requested photocopies once, and Hobson granted his request (and made the copies for free).  *Id.*  Ex. 3.  Hodgson has not offered any evidence to rebut Hobson's assertion.  Because Hodgson has never been denied free photocopies, he cannot claim that he has been treated unequally.  To the extent he alleges Defendants have violated the Equal Protection Clause by forcing him to pay for photocopies, this claim fails as a matter of law.  The Court recommends that it be dismissed with prejudice.

### b. Brigid's Crosses

Hodgson claims that Christian volunteers were permitted to bring in Palm Crosses for Palm Sunday but that a Wiccan volunteer was prohibited from bringing in Brigid's Crosses for Imbolc, a Wiccan holiday.  Compl. ¶ 41, ECF No. 1.  The record is clear, however, that Hobson gave the Wiccan volunteer permission to bring in at least one pre-made Brigid's Cross for use in an Imbolc

ceremony.  Hodgson Aff. Ex. 9, ECF No. 58.  According to Hobson, the volunteer declined to do so.  *Id.* Ex. 11 at 3.  Hodgson cannot show that he was treated differently than Catholic inmates because the Wiccan volunteer did not seek (nor was he denied) permission to bring in pre-made Brigid's Crosses to distribute to the inmates.  *Id.* Ex. 9.  He asked for permission to show the inmates how to *construct* the crosses.  *Id.*  Hodgson has not presented any evidence to show that Catholic inmates were allowed to construct crosses during their religious ceremony. Because Hodgson has not presented sufficient evidence to show that he was treated unequally on account of his religion, his equal protection claim fails as a matter of law.  The Court recommends that this claim be dismissed with prejudice.

## I.    Defendants' personal liability

Defendants generally contend that Hodgson cannot hold them personally liable either because he has failed to allege sufficient personal involvement on their part or, in the alternative, because they are entitled to qualified immunity.  The Court finds that Hodgson has alleged sufficient personal involvement on the part of Defendants Reishus and Vezner to render them personally liable for their unconstitutional acts.  The Court further finds that Defendants Reishus and Vezner are not entitled to qualified immunity on Hodgson's free speech claim as it relates to the confiscation of the photographs.

### 1. Defendant Reishus's and Vezner's personal involvement

A plaintiff in a 42 U.S.C. § 1983 action must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution.  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).  Hodgson alleges that Defendants Reishus and Vezner violated his First Amendment rights by confiscating the photographs in the three Wikipedia entries.  Compl.

24

at 3, ECF No. 1.  Defendants Reishus and Vezner concede that they affirmed the confiscation of the photographs.  Second Vezner Aff. Ex. 1, ECF No. 54; Reishus Aff. Ex. 1, ECF No. 52.  These actions are sufficient to render Reishus and Vezner liable in a 42 U.S.C. § 1983 action**.**

### 2. Qualified immunity

 Qualified immunity shields government officials from money damages unless a plaintiff proves that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.  *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2080 (2011).  A constitutional right is "clearly established" if a reasonable person would have known that his or her actions were unlawful.  *Bernini v. City of St. Paul*, 665 F.3d 997, ___ (8th Cir. 2012).  The Court has already determined that Defendants Reishus and Vezner violated the First Amendment by confiscating the photographs in question.  Judge Nelson previously ruled that the confiscation of similar images also violated the First Amendment.  R&R at 3-4.  Defendants Reishus and Vezner were parties to that suit. Hodgson's right to receive these types of images was clearly established, by virtue of the prior court case, when these defendants affirmed the confiscation of the photographs.  Defendants Reishus and Vezner are not entitled to qualified immunity.

### J.   Damages

Hodgson requests nominal damages of $1.00 and punitive damages "should the Court deem them proper and just."  Compl. 19, ECF No. 1.

### 1. Nominal damages

The Court recommends awarding Hodgson nominal damages of $1.00 for the deprivation of his First Amendment rights.  *See Risdal v. Halford*, 209 F.3d 1071, 1073 (8th Cir. 2000) (awarding an inmate nominal damages of $1.00 after a jury found that prison officials violated his First

Amendment rights).

### 2. Punitive damages

Punitive damages are appropriate in a 42 U.S.C. § 1983 action when a defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Royal v. Kautzky,* 375 F.3d 720, 724 (8th Cir. 2004). "If a district court finds a defendant's conduct meets the threshold for awarding punitive damages, the court should then consider the two purposes of punitive damages: (1) [to] punish willful or malicious conduct; and (2) [to] deter future unlawful conduct." *Id.* The Court concludes that Hodgson is entitled to punitive damages, but a genuine issue of material fact exists as to the amount of the award.

Judge Nelson previously ruled that the confiscation of similar images violated the First Amendment because the parties conceded that the images did not violate MCF-STW's contraband policy. Judge Nelson warned that "if in the future Defendants confiscate similar materials that do not violate the contraband policy, Plaintiff may very well be able to establish a constitutional violation for damages." R&R at 4, n.4. Defendants Reishus and Vezner were parties to that case and subsequently affirmed the confiscation of similar images notwithstanding Judge Nelson's admonition. Although Defendants Reishus and Vezner claim that these images violate the policy, they do not explain why Hodgson was previously allowed to receive similar photographs. In any event, another MCF-STW administrator concedes the images are "allowable," and the images are currently in Hodgson's possession.

The Court finds, as a matter of law, that Defendants Reishus and Vezner were callously indifferent to Hodgson's First Amendment rights. *See Williams v. Brimeyer*, 116 F.3d 351, 354-55 (8th Cir. 1997) (affirming a finding of callous indifference after two prison officials confiscated a

prisoner's mail pursuant to a blanket ban that the officials knew was unconstitutional).  A punitive damages award will (1) punish Defendants Reishus and Vezner for their malicious violation of Hodgson's First Amendment rights and (2) deter MCF-STW officials from violating those rights again in the future.

The only remaining issue is the amount of punitive damages to be awarded.  The Court concludes that this is a genuine issue of material fact.  *See Quigley v. Winter*, 598 F.3d 938, 953-56 (8th Cir. 2010) (outlining the factors to be considered in assessing the reasonableness of a punitive damages award, including: [1] the reprehensibility of the defendants' conduct; [2] the ratio between the punitive damages and the actual harm; and [3] other sanctions that could be imposed for comparable misconduct).  The Court recommends that the case be scheduled for trial solely on the issue of the amount of the award.

## III.    CONCLUSION

The Court concludes the following:

- The Free Speech Clause claim in Count I is not moot because Defendants have not shown that it is absolutely clear that their unconstitutional conduct is unlikely to recur.

- Defendants Reishus and Vezner violated the Free Speech Clause of the First Amendment by confiscating Hodgson's Wikipedia images in May 2010.

- Defendants Reishus and Vezner are not entitled to qualified immunity on that claim because Hodgson's constitutional right to receive the images was clearly established, by virtue of the prior case, at the time of the confiscation.

- Hodgson is entitled to nominal damages of $1.00 for the violations of his First Amendment rights.

- Hodgson is entitled to punitive damages against Defendants Reishus and Vezner, each in their individual capacities, in an amount to be determined at trial.

- Defendants are entitled to immunity under the Eleventh Amendment to the extent Hodgson seeks damages against them in their official capacities.

- To the extent Hodgson alleges in Count I that Defendants violated the Free Exercise Clause of the First Amendment, the Fifth Amendment, or the Fourteenth Amendment by confiscating the images, Defendants are entitled to judgment as a matter of law on those claims.

- Defendants are entitled to judgment as a matter of law on Counts II, III, IV, V, and VI of the complaint.

## VI.    RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, it is **HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 41) should be **GRANTED in part** and **DENIED in part**.

   a. To the extent Defendants seek to dismiss Counts II, III, IV, V, and VI of the complaint, the motion should be **GRANTED**.

   b. To the extent Defendants seek to dismiss Count I of the complaint, the motion should be **GRANTED in part** and **DENIED in part**.

2. The Court should grant summary judgment in favor of Hodgson on Count I of the complaint to the extent it alleges that Defendants Reishus and Vezner violated his First Amendment rights by confiscating the Wikipedia images in May 2010.  The remaining

allegations in Count I should be **DISMISSED WITH PREJUDICE**.

3.   Plaintiff's Motion to Dismiss Defendant's Motion for Summary Judgment (ECF No. 57) should be **DENIED** as moot.

4.   Counts II, III, IV, and VI of the complaint should be **DISMISSED WITH PREJUDICE**.

5.   Count V of the complaint should be **DISMISSED** as follows:

   a.   The Fourteenth Amendment claim should be **DISMISSED WITH PREJUDICE**.

   b.   The Establishment Clause claim should be **DISMISSED WITHOUT PREJUDICE**.

6.   Defendants Tom Roy, Joan Fabian, John King, Michelle Smith, Joseph Hobson, Bruce Julson, Greg Lindell, John Doe, and Jane Doe should be **DISMISSED** from the suit.

7.   The Court should award Hodgson nominal damages in the amount of $1.00 and punitive damages in an amount to be determined at trial.


DATED: May 2, 2012                    _s/ Franklin L. Noel_____

                                      FRANKLIN L. NOEL
                                      United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **May 16, 2012**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.